IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00893-MSK-KLM

BIGSKY, LLC, a Colorado limited liability company,

        Plaintiff,

v.

HARTFORD CASUALTY COMPANY, an Indiana corporation,

        Defendant.

**OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT TO DEFENDANT**

**THIS MATTER** comes before the Court on Plaintiff BigSky, LLC's ("BigSky") Motion for Summary Judgment **(#11)**, to which Defendant Hartford Casualty Company ("Hartford") responded **(#14)**, and BigSky replied **(#15)**; and Defendant Hartford's Motion for Summary Judgment **(#12)**, to which BigSky responded **(#13)**, and Hartford replied **(#16)**. Having considered the same, the Court **FINDS** and **CONCLUDES** as follows.

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

### II. Issues Presented

The issues presented in both of the motions for summary judgment concern the interpretation of Hartford's obligations under an insurance policy (the "Policy") issued to BigSky. In particular, the Court is asked to determine (i) whether Hartford has a duty to defend and indemnify BigSky under the Business Liability Coverage provisions, and (ii) whether Hartford has a duty to pay BigSky for loss of personal property seized by a sheriff pursuant to a

writ of attachment under the Special Property Coverage provisions. Although these issues are raised in cross-motions for summary judgment, the parties agree that as to them there is no dispute as to material fact, either with regard to the existence and terms of the contract or as to the underlying facts on which insurance coverage is sought. Rather, both parties seek a legal determination as to the meaning of a contract. Thus, this situation is more akin to a joint request for a determination as a matter of law based upon stipulated facts. The Court's role, therefore, is to interpret and apply the contractual terms, entering judgment in favor of the party entitled thereto under the law.

### III. Material Facts

#### A. The State Court Action

In December 2008, 1428 Pearl Street Mall, LLC ("1428 Pearl") initiated an action in a state district court against, *inter alia*, BigSky and Looking Glass Systems, LLC ("Looking Glass") (the "State Court Action"). According to the Complaint in the State Court Action,[1] Plaintiff 1428 Pearl obtained a default judgment against Looking Glass in the amount of $100,000 in a prior action regarding a lease dispute. Looking Glass did not pay the judgment, and before 1428 Pearl could collect on it, Looking Glass transferred substantially all of its assets

---

[1] The parties have not provided any evidentiary support for the allegations in the Complaint in the State Court Action (for example, regarding the action involving a lease dispute in which the default judgment was entered). The truth of these facts, however, is not material to a determination of the motions currently before the Court. Rather, it is the fact of the complaint and the allegations contained therein (and the resulting writ of attachment) that are material. *See Cotter Corp. v. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 827 (Colo. 2004) (noting that the duty to defend arises solely from the allegations in the underlying complaint). Notably, because the writ of attachment and Hartford's denial of coverage were based on the Complaint (filed December 12, 2008) and not the First Amended Complaint (filed September 14, 2009) in the State Court Action, it is that pleading that is relevant to this case.

2

to BigSky, without consideration.

Contending that this was a fraudulent transfer, 1428 Pearl asserted three claims against BigSky in the State Court Action: (i) to avoid the transfer pursuant to the Colorado Uniform Fraudulent Transfer Act, Colo. Rev. Stat. § 38-8-105; (ii) for a determination that BigSky is liable on the judgment as a successor to Looking Glass; and (iii) participation in a civil conspiracy. 1428 Pearl sought and obtained a pre-judgment a writ of attachment for all of BigSky's personal property.[2] Pursuant to the writ and upon the posting of a $10,000 bond, the Boulder County Sheriff seized all of the property owned, held, or maintained by BigSky.

BigSky alleges that it sent written notices to Hartford regarding the seizure of its property shortly thereafter.[3] Hartford responded to BigSky's written notices and informed BigSky that it did not believe that it had any duty to defend or indemnify BigSky regarding the lawsuit initiated by 1428 Pearl.

**B. The Insurance Policy**

At the time of the initiation of the State Court Action, BigSky was the insured under a business insurance policy purchased from Hartford. The Business Liability Coverage Form provides:

> [Hartford] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising

---

[2] The writ of attachment states that it was supported by the allegations in the complaint and in an affidavit by J Nold Midyette. After the property was seized, the Court held an evidentiary hearing on BigSky's traverse. The state court issued its Findings of Fact and Order on February 11, 2009, providing that it would dissolve the writ of attachment upon the posting of a bond by all defendants in the amount of $200,000.

[3] Because the parties have not submitted these letters, the scope of what BigSky requested from Hartford is unclear.

injury" to which this insurance applies. [Hartford] will have the right and duty to defend the insured against any "suit" seeking those damages.[4]

Coverage is available if the "property damage" is caused by an "occurrence"[5], which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions".[6] The policy further defines "property damage" as

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[7]

Damage to property owned, rented, or occupied by the insured and damage to personal property in the care, custody or control of the insured is expressly excluded. [8]

Under the Special Property provisions, Hartford is obligated to "pay for direct physical loss of or physical damage to Covered Property at the premises . . . caused by or resulting from a Covered Cause of Loss."[9] Covered Causes of Loss are defined as "risks of direct physical loss" unless the loss is expressly excluded in the policy.[10] The Special Property provisions expressly exclude coverage for a loss or damage caused by the "[s]eizure or destruction of property by

---

[4] Business Liability Coverage Form § A.1.a, filed as Exhibit 2 to the Plaintiff's Motion for Summary Judgment, **#11-3** and **#11-4**.

[5] *Id.* § A.1.b.1.

[6] *Id.* § G.16.

[7] *Id.* § G.20.

[8] *Id.* §§ B.1.k.1 and B.1.k.4.

[9] Special Property Coverage Form § A, filed as Exhibit 1 to the Plaintiff's Motion for Summary Judgment, **#11-1** and **11-2**.

[10] *Id.* § A.3.

4

order of governmental authority."[11]

## IV. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). As is the case here, summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## V. Analysis

In this action, BigSky asserts four claims for relief: (1) a request for a declaration that Hartford is required to provide BigSky with defense and indemnity coverage for the claim; (2) an award of damages for breach of contract by denial of coverage; (3) an award of damages for bad faith breach of contract for denial of coverage; and (4) an award of damages for violation of Colo. Rev. Stat. § 10-3-1115 in unreasonably denying payment of BigSky's insurance claim. At the core of all of these claims are Hartford's contractual obligations under the Policy. BigSky contends that Hartford is obligated (i) to defend and indemnify it under the Business Liability provisions, and (ii) to pay a casualty claim under the Special Coverage. Hartford contends that it is not so obligated.

### A. The Business Liability provisions

The Court begins with the question of whether the Business Liability provisions obligate Hartford to defend and indemnify BigSky in the State Court Action.[12]

---

[11] *Id.* § B.1.b.

[12] Often, the obligation to defend is broader than the obligation to indemnify because a complaint may state claims that could fall within coverage, but there may ultimately be no determination of liability on such claims. *See Cotter Corp. v. Am. Empire Surplus Lines Ins.*

In Colorado, this question is one of law determined solely by reference to the complaint in the underlying action. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). A court compares the allegations in the underlying complaint against the relevant provisions of the insurance contract at issue to determine whether the allegations in the complaint, if true, would impose liability under the insurance policy. *See Apt. Inv. & Mgmt. Co. v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1193 (10th Cir. 2010). To be excused from defense of its insured, the insurer bears a "heavy burden" of demonstrating that the allegations in the underlying complaint do not fall within the insurance coverage. *See id.*

Pursuant to the provisions of the Business Liability Policy, Hartford is obligated to defend and indemnify BigSky in (i) a suit seeking damages[13]; (ii) for physical injury to or loss of use of tangible property[14]; (iii) owned by or in the possession of someone other than the insured[15]; (iv) that was caused by a defined occurrence.[16] BigSky argues the State Court Action triggers Hartford's duty to defend because 1428 Pearl seeks an award of damages due to " loss of use" of property transferred by Looking Glass to BigSky. Hartford responds that it has no obligation under the Business Liability provisions because (i) the complaint in the State Court Action fails to state a claim for the loss of use of personal property; (ii) there has been no

---

*Co.*, 90 P.3d 814, 827 (Colo. 2004); *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991). Accordingly, when, as here, there has not been a determination of liability in the underlying action, the Court's analysis focuses only on the duty to broader duty to defend.

[13] Business Liability Coverage Form § A.1.a.

[14] *See id.* § G.20 (definition of "property damage").

[15] *Id.* §§ B.1.k.1, B.1.k.4.

[16] *See id.* §§ A.1.b.1.

"occurrence" as defined in the Policy; (iii) coverage for property owned by or in the possession of BigSky is excluded; and (iv) the alleged actions of BigSky that led to the State Court Action occurred prior to the commencement of insurance coverage. Comparing the provisions of the Policy with the allegations in the complaint in the State Court Action, the Court agrees with Hartford that it has no obligation to defend BigSky for several reasons.

First, the Court observes that the State Court Action is not of the ordinary type anticipated by liability insurance policy provisions of this type—an action by a party who seeks to recover for the loss of its property, or use of its property, due to the actions of the insured. When it initiated the State Court Action, 1428 Pearl was not a property owner seeking to recover for the loss of its property, nor did it have an interest in or right to "use" property owned by Looking Glass.[17] 1428 Pearl was simply an unsecured judgment creditor that sought to satisfy its judgment by recovering Looking Glass' property or the value of such property.

Second, contrary to the assertions of BigSky, the complaint in the State Court Action does not allege that Looking Glass was unable to "use" its property to satisfy 1428 Pearl's judgment.[18] To the contrary, the fraudulent transfer claim, which is the only claim focused upon

---

[17] The earliest that 1428 Pearl could have acquired some interest in the property was after the Sheriff seized it pursuant to a prejudgment writ of attachment. The Sheriff was required to sequester and maintain it pending further order of the court.

[18] The paragraph in the Complaint cited to by BigSky for this proposition reads:
> 32. Accordingly, approximately two weeks after default judgment had been entered against Looking Glass in favor of Plaintiff, Looking Glass transferred substantially all of its assets to its successor, BigSky, thereby leaving Looking Glass without any assets to satisfy Plaintiff's judgment.

*See* State Court Complaint ¶ 32, filed as Exhibit 4 to the Plaintiff's Motion for Summary Judgment, **#11-6**.

particular property,[19] is premised upon Looking Glass' voluntary transfer of its property to BigSky. 1428 Pearl contends that the same people control both Looking Glass and BigSky and that they transferred Looking Glass's assets to shield them from collection. In essence, the complaint alleges that Looking Glass "used" its property and continues to "use" it under the guise of BigSky. *See* Colo. Rev. Stat. § 38-8-105 (addressing transfers that are fraudulent as to present and future creditors). Thus, the complaint in the State Court Action does not allege a loss or loss of use of personal property sufficient to trigger Hartford's duty to defend.

Assuming, however, that a claim for loss of use of property can be inferred from the complaint's allegations, the Business Liability provisions of the Policy exclude coverage if the property which has been lost (or of which the party has lost use) is owned by or in the custody of the insured—here, BigSky. The property at issue in the State Court Action is that which was transferred from Looking Glass to BigSky. Such property was seized from BigSky pursuant to the writ of attachment. Thus, even though there might be a dispute as to whether BigSky or Looking Glass owns the property, there is no dispute that the property was in BigSky's possession, thereby excluding it from coverage. Accordingly, the Court finds that Hartford has no obligation to defend BigSky in the State Court Action and, ultimately, no obligation to

---

[19] As noted *supra*, the complaint in the State Court Action contains three claims against BigSky—fraudulent conveyance, civil conspiracy and successor liability—all based upon a the transfer of all of Looking Glass's assets to BigSky. Only the first claim, however, concerns particular property. Assuming that Looking Glass's transfer of its property to BigSky was a fraudulent conveyance, 1428 Pearl seeks *in rem* relief in the form of either avoidance of the transfer of Looking Glass's assets (to be followed by levy and execution sale) or recovery of their value. As to the other claims (successor liability and civil conspiracy), 1428 Pearly seeks a declaration that Big Sky is liable on the judgment entered against Looking Glass.

indemnify it for loss of use of the property.[20]

 B. The Special Property Provisions[21]

BigSky also argues that Hartford is obligated to pay for the loss of the property seized from it as a casualty loss under the Special Property provisions of the Policy. Hartford responds that it does not have an obligation to pay under this provision because (i) the Sheriff's seizure of the property is an event that results in an exclusion from coverage; and (ii) BigSky never demanded payment under the Special Property Coverage. The Court agrees with Hartford that the Sheriff's seizure of the property was not covered under the Special Property provisions and, therefore, declines to reach the issue of whether BigSky made a proper insurance demand.

With regard to casualty claims, the insured bears the initial burden of establishing coverage, but the insurer bears the burden of establishing the applicability of an exclusion to coverage. *See Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir 2006). In this case, the Special Property Coverage provisions apply when there is a direct loss of or damage to covered property. Covered property includes property (including computers and software) owned by BigSky or by its employees if used by BigSky in its operations.[22] However, certain losses are expressly excluded from coverage. Among these are losses due to "[s]eizure or

---

[20] Based on these conclusions, there is no need to address whether the seizure constituted an "occurrence" under the Policy or whether BigSky's actions were taken during the policy period.

[21] Although the parties dispute whether a breach of contract claim for this obligation was properly pled, in order to comprehensively address the parties' arguments, the Court assumes that BigSky adequately alleged both breaches.

[22] Special Property Coverage Form § A.1.; Computers and Media Endorsement, filed as Exhibit A-7 to the Defendant's Motion for Summary Judgment, **#12-10**.

destruction of property by a governmental authority".[23]

Hartford argues that the Sheriff's seizure of the computers and other personal property of BigSky pursuant to a writ of attachment falls within this exception. BigSky candidly responds that it is not aware of any caselaw in Colorado, or elsewhere, that addresses the scope of this type of exclusion. However, relying upon caselaw from other jurisdictions, it contends that the language should be restricted to circumstances where there is a governmental interest that drives the seizure. Bigsky argues that because the Sheriff seized the property in aid of a private party, 1428 Pearl, there was no governmental interest at stake and that had 1428 Pearl waited until after the State Court Action were concluded to levy and execute on the property, there would have been no seizure pursuant to a writ, and therefore no government action. BigSky contends that it would be illogical to find an exclusion in this circumstance, but not in recovery against the property at the conclusion of the litigation. Finally, it argues that the language of the exclusion is ambiguous.

BigSky's arguments are unpersuasive. First, BigSky's reliance on caselaw from outside of Colorado is misplaced. Interpretation of the Policy at issue in this case is governed by Colorado law. Therefore, opinions from states other than Colorado can be, at most, persuasive authority, but only if the policies and law in such states is similar to that of Colorado. Unfortunately, the cases upon which BigSky relies, do not evidence any similarity between the law and policy applied and that in Colorado. More importantly, none hold that a governmental purpose is a condition precedent to application of similar exclusions in similar circumstances. Indeed, none of these opinions address the situation presented here, seizure by a governmental

---

[23] Special Property Coverage Form § B.1.b.

entity pursuant to court order issued in a civil case.[24]

BigSky's suggestion that there is a fundamental difference in the scope of coverage depending upon the timing of collection against property is also misplaced. As Hartford correctly notes, the Colorado case upon which BigSky relies for procedural differences deals with procedures no longer in effect. *Compare Walker v. Staley*, 1 P.2d 924, 925 (1931) (noting that the Code of Civil Procedure does not require a court order for a judgment creditor to cause execution to be levied on the debtor's real property), *with* Colo. R. Civ. P. 69(a) (providing that the "process to enforce a final money judgment shall be by writ of execution"). Because there are many options available to judgment creditors, this Court is unwilling to speculate as to what the outcome of the State Court Action might be or the means be which 1428 Pearl might recover the property if it prevails.[25]

Finally, the exclusionary language in the Special Property Coverage provisions regarding

---

[24] *See Danulevich v. Hartford Fire Ins. Co.*, 421 A.2d 559, 562 (Conn. Super. Ct. 1980) (concluding that a policy exclusion for "confiscation by order of any government or public authority" did not apply to a search warrant and, in particular, did not apply to the seizure of items not covered by the search warrant); *Dronge v. Monarch Ins. Co. of Ohio*, 511 F.Supp. 1, 10 (D. Kan. 1979) (concluding that an exclusion for losses resulting from governmental seizure did not apply when the item seized was already a complete loss prior to seizure); *Abdoo v. LMI Prudential Ins. Co.*, 669 N.E.2d 870, 873–74 (Ohio Ct. App. 1995) (concluding that the seizure pursuant to a search warrant was a governmental action and, therefore, excluded from coverage under the insurance policy).

[25] Different outcomes might result in different means of recovery. For example, were 1428 Pearl to prevail on the fraudulent conveyance claim, the transfer of the property from Looking Glass to BigSky could be avoided, making the property that of Looking Glass and therefore not subject to BigSky's insurance coverage. Alternatively, if 1428 Pearl were to obtain a determination that BigSky is liable for all debts of Looking Glass including the judgment in favor of 1428 Pearl, 1428 Pearl might collect against the property directly by levy and execution.

governmental authority is not ambiguous.[26] The language of the exclusion is undeniably broad, covering all types of governmental seizures, but the language is clear. There is nothing in this record that suggests that the parties intended a limitation to be placed on the breadth of the exclusion. Therefore, this Court agrees with the interpretation of similar language by the U.S. District Court in the Western District of Kentucky in *Alonso v. State Farm Mutual Auto. Ins. Co.*, 2006 WL 1868491, at *3 (W.D. Ky. June 30, 2006). It found that "that the plain language of the exclusion suggests no rationale or distinction" based on the basis for the seizure.

Assuming, however, that there is some ambiguity in the exclusion language and a governmental purpose is required for application of the exclusion, the Court is satisfied that execution of the writ of execution is sufficient to demonstrate such purpose. Resort to judicial authorization for police action, even in the service of private objectives, furthers the public purpose of enforcing state court judgments in a predictable fashion that assures notice and opportunity to object to a judgment debtor.

In conclusion, the material facts of this case are not in dispute; the only dispute is a question of law as to Hartford's obligations under the Policy. Pursuant to the terms of the Policy, Hartford has no duty to defend in the State Court Action and no obligation to pay a casualty claim premised upon the seizure of personal property from BigSky.

**IT IS THEREFORE ORDERED** that

(1) Plaintiff BigSky's Motion for Summary Judgment **(#11)** and Defendant

Hartford's Motion for Summary Judgment **(#12)** are **GRANTED** insofar as they

---

[26] A disagreement between the parties as to the interpretation of a provision, however, is not alone sufficient to create an ambiguity. *See Cherokee Metro. Dist. v. Simpson*, 148 P.3d 142, 146 (Colo. 2006).

seek a determination as a matter of law. However, because all of BigSky's claims are premised upon the terms of an insurance Policy under which the Court has concluded that Hartford has no obligations to BigSky with regard to the State Court Action, judgment shall enter in favor of Defendant Hartford and against Plaintiff BigSky on all claims.

(2) The Clerk of Court shall close this case.

Dated this 5th day of August, 2010

BY THE COURT:

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge